IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

RICHARD E. BECKER                                                    PLAINTIFF

VS.                                                     CIVIL ACTION NO. 2:11cv69-MTP

DR. RON WOODALL                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the court on the Defendant's Motion for Summary Judgment [31]. Having reviewed the submissions of the parties and the applicable law, the court finds that the Motion [31] should be granted and that this action should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff Richard E. Becker, proceeding *pro se* and *in forma pauperis*, filed his civil rights complaint [1] on March 28, 2011. Plaintiff's claims occurred while he was incarcerated at the South Mississippi Correctional Institution ("SMCI"), where he is currently housed. As set forth in his complaint [1], and as clarified during his *Spears*[1] hearing, Plaintiff asserts a claim against Dr. Ron Woodall, a doctor at SMCI employed by Wexford Health Sources, for the denial and/or delay of adequate medical treatment in violation of the Eighth Amendment.[2] Specifically, he claims that Dr. Woodall failed to approve his hernia surgery when he needed it in mid-to-late 2010. Plaintiff ultimately had the surgery at the end of 2011, but he claims Dr. Woodall only approved it after Plaintiff filed this lawsuit. Plaintiff claims he suffered for over a year as a

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on March 22, 2012. The transcript from Plaintiff's *Spears* hearing is attached as Exhibit B to Defendant's Motion for Summary Judgment [31] and is cited herein as "Tr. [31-2] at __." *See* Transcript [31-2].

[2] Plaintiff also named Christopher Epps and Ron King as Defendants in this matter; Mr. Epps and Mr. King were dismissed by Order [16] dated September 19, 2011, pursuant to Plaintiff's request to voluntarily dismiss them.

result of the delay. Plaintiff seeks $30,000 for pain and suffering and $30,000 for stress and mental anguish. He also seeks court costs and filing fees.[3]

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), or unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), are not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis

---

[3]Plaintiff also initially requested an order from the court requiring immediate surgery. However, that request is moot as Plaintiff has now had his hernia surgically repaired.

omitted).

## ANALYSIS

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004), *cert. denied*, 543 U.S. 864 (2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may not be held liable under this standard pursuant to Section 1983 unless the Plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756).

"[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d

3

191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

As stated above, Plaintiff claims that Dr. Woodall failed to approve his hernia surgery when he needed it in late 2010. Plaintiff ultimately had the surgery at the end of 2011, but he claims Dr. Woodall only approved it after Plaintiff filed this lawsuit. Plaintiff claims he suffered for over a year as a result of the delay.

The record reflects that Plaintiff submitted a sick call request on May 21, 2010, complaining of a lump near his left testicle. Plaintiff was triaged by a nurse the next day and saw Frank McGrew, a physician's assistant, on May 25, 2010. Plaintiff was diagnosed with a left inguinal hernia, 6 cm x 7 cm, that was 50% reducible. *See* Ex. A [34] at 31, 238. Plaintiff denied any pain. Mr. McGrew ordered Plaintiff a hernia belt and restricted his lifting to ten pounds and under, and advised him to return to the clinic in three months. *Id*. at 32-33, 237. Plaintiff was subsequently seen by a nurse in early June 2010, for pain associated with the hernia. *Id.* at 38, 235. Plaintiff saw Mr. McGrew a few weeks later and was prescribed pain medication. It was also noted that the hernia had increased in size to 8x8 cm, but was 100% reducible. *Id.* at 38, 41-42. Plaintiff submitted another sick call request complaining of hernia pain on July 15, 2010. *Id*. at 42-43, 233.

On August 17, 2010, the records show that Dr. Woodall approved Plaintiff's request for

4

a hernia belt for a 3 cm reducible hernia.  *Id.* at 57.  Plaintiff submitted sick call requests complaining of hernia pain and trouble voiding on September 16, 2010, October 5, 2010, and October 15, 2010.  *Id*. at 63-67, 225-26, 229.  Plaintiff saw Dr. Charmaine McCleave on October 19, 2010.  Dr. McCleave noted that the hernia was small and easily reducible, and that Plaintiff had a hernia belt.  He was prescribed pain medication and the plan was to "observe and refer when needed."  *Id.* at 71-72.

On November 2, 2010, Plaintiff submitted a sick call request stating he needed another hernia belt because his was taken during a shake-down.  Plaintiff saw Dr. Woodall on November 5, 2010, and he approved the hernia belt request and noted that the hernia was small and reducible.  *Id*. at 73-80, 223.

On or about December 17, 2010, Plaintiff submitted a sick call request complaining of pain, gas, and constipation associated with his hernia.  Plaintiff saw Gwendolyn Woodland, a nurse practitioner, a few days later and was prescribed medication for pain, gas, and constipation.  It appears Ms. Woodland also submitted a surgical consult request for the hernia; Dr. Woodall noted that "additional information was required."  *Id*. at 82-88, 221.

Plaintiff saw Dr. Woodall on February 22, 2011, for a follow-up/surgery consult.  Dr. Woodall noted that Plaintiff's hernia was reducible and ordered him another hernia belt, as he had lost his previous belt.  *Id.* at 96-98.

Plaintiff saw Dr. McCleave on September 7, 2011, complaining of hernia pain.  Dr. McCleave noted that the hernia had increased in size from 3 cm in February to the size of a tennis ball.  She ordered Plaintiff another hernia belt and requested a surgery consultation, which was approved by Dr. Woodall the same day.  An appointment with an outside surgeon was scheduled. *Id*. at 122-28.

Plaintiff submitted a sick call request on September 9, 2011.  He was seen by a nurse and

was advised to continue taking his ibuprofen.  He was seen by Karen McLain, a nurse practitioner, a few days later, and she changed his pain medication.  *Id*. at 128-33.

Plaintiff saw Dr. Scott Guidry at Hattiesburg Clinic on September 29, 2011 for a surgery consultation.  *Id*. at 138, 197-201.  Dr. Guidry performed surgery to repair the hernia on October 7, 2011.  *Id.* at 192-94.  One day following surgery, Plaintiff reported he felt "great" and asked to be discharged from the SMCI infirmary.  *Id.* at 157.  Plaintiff returned to Dr. Guidry for a follow-up appointment on October 13, 2011.  Dr. Guidry reported that Plaintiff was doing well and voiced no complaints; he was restricted to light-duty activity for 2.5 weeks.  *Id.* 158-60, 190.  On October 20, 2011, Plaintiff requested a release from the doctor to go back to work and reported that everything was "good."  He was released for light-duty work.  *Id.* at 162-65.

Based on the evidence before the court, Plaintiff has failed to show that Dr. Woodall was deliberately indifferent to a serious medical condition by failing to ensure that his hernia surgery was performed sooner than it was.  The medical records reflect that Plaintiff was treated on multiple occasions by various providers, including Dr. Woodall, for his hernia, and was prescribed medications for pain and given a hernia belt.  Moreover, as set forth in Dr. Woodall's affidavit, on the times he saw Plaintiff prior to September 7, 2011, surgery was not necessary based on the size of the hernia and the fact that it was reducible.  During this time, Plaintiff was monitored and provided with a hernia belt and pain medication.  *See* Ex. C to Motion [31-3].  Thus, it appears that Plaintiff merely disagrees with the treatment he received, and believes he should have received surgery sooner than he did.  As previously stated, Plaintiff's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."  *Norton*, 122 F.3d at 292.

There is no evidence in the record indicating that Dr. Woodall should have referred Plaintiff for surgery sooner than he did.  Therefore, Plaintiff has failed to show that Dr. Woodall

subjectively knew of and disregarded "an excessive risk to [his] health or safety." *Farmer*, 511 U.S. at 838.

Even assuming that Dr. Woodall were deliberately indifferent in delaying Plaintiff's surgery, it does not constitute an Eight Amendment violation because such delay did not result in substantial harm. *See Mendoza*, 989 F.2d at 195. Based on the record, including Plaintiff's own statements to his health providers, Plaintiff's hernia has been surgically repaired and he felt "great" after the surgery; indeed, he requested a release to return to work just a few weeks after the surgery. Based on the foregoing, Dr. Woodall is entitled to judgment as a matter of law.

IT IS, THEREFORE, ORDERED:

That the Defendant's Motion for Summary Judgment [31] is GRANTED and that this action is dismissed with prejudice.

A separate judgment will be filed herein in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED AND ADJUDGED this the 13th day of September, 2012.

s/ Michael T. Parker
United States Magistrate Judge